UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MALIK & SONS, LLC,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-6938** |
| **CIRCLE K STORES, INC.,**<br>    **Defendant** | **SECTION: "E" (5)** |

### ORDER AND REASONS

Before the Court are two motions for summary judgment. On November 29, 2016, Plaintiff Malik & Sons, LLC filed its motion for summary judgment,[1] and on November 30, 2016, Defendant Circle K Stores, Inc. filed its motion for summary judgment.[2] Both motions are opposed.[3] Because the motions address the same facts and issues of law, the Court considers them together. For the following reasons, both motions are **DENIED**.

### BACKGROUND

Plaintiff Malik & Sons, LLC ("Malik") owns a parcel of land in Covington.[4] Malik alleges it entered into a lease with Defendant Circle K Stores, Inc. to lease the property.[5]

Malik contends it signed the lease at issue on July 29, 2014 and alleges Circle K executed the lease on August 28, 2014.[6] Malik thus argues that the lease was fully executed on August 28, 2014.[7] Malik argues Circle K had a 90-day "feasibility period,"

---

[1] R. Doc. 52.
[2] R. Doc. 54.
[3] R. Doc. 55 (Circle K's opposition to Malik & Sons' motion); R. Doc. 56 (Malik & Sons' opposition to Circle K's motion).
[4] R. Doc. 1.
[5] *Id.* at 2.
[6] R. Doc. 52-1 at 2.
[7] *Id.* Section 4.3 of the lease provides "This Lease and Tenant's obligations hereunder are subject to Tenant's satisfaction or waiver of all of the following conditions within Ninety Days (90) of the full execution of this Lease the "Feasibility Period"). R. Doc. 52-2 at 2.

1

from August 28, 2014 (through November 26, 2014), to conduct its due diligence and terminate the lease or otherwise be obligated to the terms of the lease.[8]

Circle K, however, argues the lease was not fully executed until October 7, 2014, as reflected on Page 1 of the lease, and thus the 90-day feasibility period did not lapse until January 5, 2015.[9]

On November 11, 2014, Circle K advised Malik it was terminating the agreement.[10] On November 24, 2014, Circle K rescinded the termination and said "This letter will act as notification that the effective dates and timing in the lease dates October 7, 2014 are still valid and the lease is still valid."[11]

On December 27, 2014, Circle K notified Malik in writing it was again terminating the lease agreement.[12] Malik argues Circle K no longer had the right to terminate the lease because the feasibility period expired in November.[13] Circle K, however, contends the feasibility period began on October 7, 2014 and expired on January 5, 2015, because the lease was not fully executed until October 7, rather than August 28.[14] Malik contends Circle K erroneously places the execution date on October 7, 2014 solely because an escrow agent wrote October 7, 2014 on the first page of the document.[15]

Under the terms of the lease, Circle K was required to open an escrow account with the escrow agent "upon the execution of the lease."[16] Malik maintains that date was

---

[8] *Id.*
[9] R. Doc. 54-1.
[10] R. Doc. 52-3.
[11] R. Doc. 52-4.
[12] R. Doc. 52-5.
[13] R. Doc. 52-1.
[14] R. Doc. 54-1.
[15] R. Doc. 52-1 at 2.
[16] R. Doc. 52-2 at 1.

2

August 28, 2014, and because Circle K did not establish the escrow account until October, it breached the agreement.

On December 18, 2015, Malik filed this lawsuit, seeking damages under the contract for Circle K's breach and failure to perform. Malik also seeks attorney's fees and costs as provided in the lease agreement.

On May 18, 2016, Malik filed a motion for partial summary judgment, arguing the lease was executed on August 28, 2014 and the feasibility period ended on November 26, 2014—before Circle K sought to terminate the lease.[17] On June 27, 2016, Circle K filed a motion for summary judgment, arguing the lease was executed on October 7, 2014 and that its termination of the lease on December 27, 2014 was within the feasibility period.[18] The Court heard oral arguments on July 13, 2016, and denied both motions, finding disputed issues of material facts existed.[19]

Both Malik and Circle K re-urge their motions for summary judgment, which are currently before the Court.[20] The main issue before the Court on these motions for summary judgment is whether the lease was fully executed on August 28, 2014, as Plaintiff contends, or on October 7, 2014, as Defendant contends.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[21] "An issue is material if its resolution could affect the outcome of the action."[22]

---

[17] R. Doc. 26.
[18] R. Doc. 30.
[19] R. Doc. 36.
[20] R. Doc. 52 (Malik's motion for summary judgment); R. Doc. 54 (Circle K's motion for summary judgment).
[21] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[22] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[23] All reasonable inferences are drawn in favor of the nonmoving party.[24] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[25]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[26] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[27]

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[28] When proceeding under the first option, if the

---

[23] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[24] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[25] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[26] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[27] *Celotex*, 477 U.S. at 322–24.
[28] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986), and requiring the movants to submit affirmative evidence to negate an essential

4

nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[29] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[30] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[31] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[32] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[33]

---

element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).

[29] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[30] *Celotex*, 477 U.S. at 332–33.
[31] *Id.*
[32] *Celotex*, 477 U.S. at 332–33, 333 n.3.
[33] *Id.*; *see also First National Bank of Arizona*, 391 U.S at 289.

**LAW AND ANALYSIS**

Louisiana law dictates "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[34] When the lease is ambiguous, the court must ascertain the intent of the parties through the use of parol evidence.[35] The first page of the lease states the lease is "dated for reference purposes . . . [and] is made and executed by and between" the parties.[36] At the bottom of the same page, the lease states "Upon execution of this Lease, Tenant shall open an escrow with Escrow Agent."[37] Section 4.3 of the lease—providing for the feasibility period—states the obligations are subject to waiver within 90 days of "the full execution of the lease."[38] The last page of the lease, above the parties' signatures, then states "the parties hereto have duly executed this Lease as of the day and year first written above."[39]

The Court finds the lease is ambiguous. The determination of whether a contract is ambiguous is a question of law.[40] "A contract is considered ambiguous on the issue of intent when either it lacks a provision bearing on that issue, the terms of a written contract are susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed."[41] It is unclear from the four corners of the lease in this case whether the lease was fully executed upon the signing of the lease by both parties[42] or upon the escrow agent

---

[34] LA. CIV. CODE art. 2046.
[35] *Greenwood 950, LLC v. Chesapeake Louisiana, LP*, 683 F.3d 666, 669–70 (5th Cir. 2012).
[36] R. Doc. 52-2 at 1.
[37] *Id.*
[38] *Id.* at 2.
[39] *Id.* at 24.
[40] *Henly v. Phillips Abita Lumber Co.*, 971 So. 2d 1104, 1109 (La. Ct. App. 1 Cir. 10/3/07).
[41] *Campbell v. Melton*, 817 So. 2d 69, 75 (La. 2002).
[42] Malik signed the lease on July 29, 2014 and Circle K signed the lease on August 28, 2014.

6

writing the date on the lease and opening the escrow account.[43] Therefore, the lease is susceptible to more than one interpretation, there is uncertainty or ambiguity as to its provisions, and the intent of the parties cannot be ascertained from the lease language.

Because the language of the contract is unclear and ambiguous, it is necessary to go beyond the lease to determine the intent of the parties.[44] "The intent of the parties constitutes a genuine issue of material fact which must be decided on a full trial on the merits."[45] "[I]n motions for summary judgment where a contract is ambiguous and the intent of the parties becomes a question of fact, . . . granting a summary judgment is not appropriate."[46]

The Court has already determined disputed issues of material facts exist with respect to the intent of the parties.[47] After reviewing the parties' renewed motions for summary judgment, the Court finds genuine disputes of material facts remain with respect to the parties' intent.

## CONCLUSION

**IT IS ORDERED** that Malik & Sons' renewed motion for partial summary judgment[48] is **DENIED**.

**IT IS FURTHER ORDERED** that Circle K Stores, Inc.'s second motion for summary judgment[49] is **DENIED**.

---

[43] The escrow agent wrote October 7, 2014 on the lease, which is the day she opened the escrow account.
[44] *Eiche v. E. Baton Rouge Par. Sch. Bd.*, 623 So. 2d 167, 169 (La. Ct. App. 1 Cir. 7/2/93), *writ denied*, 627 So. 2d 657 (La. 1993).
[45] *Fed. Nat. Mortg. Ass'n v. Sethi*, 557 So. 2d 354, 356 (La. Ct. App. 4 Cir. 1/30/90).
[46] *Carter v. BRMAP*, 591 So. 2d 1184, 1189 (La. Ct. App. 1 Cir. 11/22/91) (citing *Dixie Campers, Inc. v. Vesely Co.*, 398 So. 2d 1087 (La. 1981)).
[47] R. Doc. 36.
[48] R. Doc. 52.
[49] R. Doc. 54.

7

**New Orleans, Louisiana, this 16th day of December, 2016.**

_____
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**