**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MALIK & SONS, LLC,** **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-6938** |
| **CIRCLE K STORES, INC.,** **Defendant** | **SECTION: "E" (5)** |

## ORDER AND REASONS

Before the Court is a motion *in limine* and supplemental motion *in limine* filed by Plaintiff Malik & Son's, LLC ("Plaintiff").[1] The motions are opposed.[2] For the following reasons, the motions *in limine* are **DENIED IN PART** and **GRANTED IN PART**.

Plaintiff seeks to exclude evidence and testimony with respect to four issues: (1) Circle K's claim that Plaintiff failed to mitigate its damages, (2) Nancy Shirar's testimony regarding what she would have done under different circumstances, (3) Scott Dusang's testimony regarding what he would have done under different circumstances, and (4) Circle K's argument that a vice of consent existed. The Court will address each in turn.

### I. Mitigation of Damages

Plaintiff seeks to exclude evidence or testimony that it failed to mitigate its damages.[3] Circle K contends Plaintiff had a duty to mitigate its damages under Louisiana Civil Code article 2002, and evidence as to whether Plaintiff reasonably fulfilled this duty is admissible.[4]

---

[1] R. Docs. 83, 86.
[2] R. Doc. 91.
[3] R. Doc. 83 at 2.
[4] R. Doc. 91 at 2–14. Louisiana Civil Code article 2002 states "An obligee must make reasonable efforts to mitigate the damage caused by the obligor's failure to perform. When an obligee fails to make these efforts, the obligor may demand that the damages be accordingly reduced."

Both parties cited Louisiana cases in support of their positions. In fact, there is a split among the Louisiana courts of appeal with respect to whether a lessor has the duty to mitigate his or her damages under Louisiana Civil Code article 2002 in the event of a lessee's default.[5] The Louisiana Supreme Court has not yet ruled on this issue. The Court need not decide this issue as Louisiana Civil Code article 1983, rather than article 2002, is the basis of the Court's opinion.

Louisiana Civil Code article 1983 provides the contract is the law between the parties.[6] "The Civil Code, while defining and governing the relationship of the parties to a lease, still leaves the parties free to contractually agree to alter or deviate from all but the most fundamental provisions of the Civil Code, which govern their lease relationship."[7] "[T]he codal articles and statutes defining the rights and obligations of lessors and lessees are not prohibitory laws which are unalterable by contractual agreement, but are simply intended to regulate the relationship between the lessor and lessee when there is no contractual stipulation imposed in the lease."[8] The obligations imposed under the codal articles and statutes dealing with lease may be waived or altered by contractual agreement, as long as such agreement does not affect the rights of others and is not contrary to public policy.[9]

---

[5] *Compare Shank-Jewella v. Diamond Gallery*, 535 So. 2d 1207 (La. Ct. App. 2. Cir. 11/30/88); *Myers v. Foster*, 610 So. 2d 192 (La. Ct. App. 3 Cir. 12/9/92); *Dixie Services v. R & B Falcon Drilling, USA*, 955 So. 2d 214 (La. Ct. App. 4 Cir. 3/21/07); *Easterling v. Halter Marine*, 470 So. 2d 221 (La. Ct. App. 4 Cir. 5/8/85), *writ denied* 472 So. 2d 920 (La. 1985), *with Meadowcrest v. Toursarkissian*, 1 So. 3d 555 (La. Ct. App. 5. Cir. 11/25/08); *BP Venture v. Stucki*, 562 So. 2d 461 (La. Ct. App. 5 Cir. 5/16/90).
[6] LA. CIV. CODE art. 1983 ("Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. Contracts must be performed in good faith.").
[7] *MIE Properties-LA, L.L.C. v. Huff*, No. 2011-0258, 2012 WL 1203373, *2 (La. Ct. App. 1 Cir. 4/9/12), *writ denied*, 91 So. 3d 974 (La. 6/22/12) (citing *Carriere v. Bank of Louisiana*, 702 So. 2d 648, 665–66 (La. 1996)).
[8] *Carriere*, 702 So. 2d at 666 (quoting *Tassin v. Slidell Mini–Storage, Inc.*, 396 So. 2d 1261, 1264 (La. 1981)).
[9] *Id.*

The Court has found no Louisiana authority stating the rule of article 2002 is a matter of public policy from which the parties may not deviate. The Court finds the parties to a lease are free to contract with respect to the parties' rights and obligations in the event of default, and may choose not to impose a duty on the lessor to mitigate its damages. Such an agreement does not affect the rights of others and is not contrary to public policy.

Section 18.1 of the lease in this case provides the landlord may exercise one of the following two remedies in the event of the tenant's default:

> 18.1.1 Landlord may continue this Lease in full force and effect, and the Lease will continue in effect as long as Landlord does not terminate Tenant's right to possession, and Landlord shall have the right to collect Base Rent, Additional Rent or any other charges as they come due. During the period Tenant is in default, Landlord can enter the Leased Premises and relet them, or any part of them, to third parties for Tenant's account. Reletting can be for a period shorter or longer than the remaining Lease Term. Tenant shall pay to Landlord the Base Rent, Additional Rent or any other charges due hereunder as the obligation arises, less all compensation Landlord receives from any reletting. After Tenant's default and for as long as Landlord does not terminate Tenant's right to possession of the Leased Premises, Tenant's right to assign or sublet the Leased Premises shall be preserved.
>
> 18.1.2 Landlord may terminate Tenant's right to possession of the Leased Premises at any time. No act by Landlord other than giving written notice to Tenant shall terminate this Lease. Upon such termination, Landlord shall be entitled to recover from Tenant the total amount of unpaid Base Rent, Additional Rent and other charges due as of the termination date, and a termination penalty equal to the total Base Rent due for the remainder of the Lease Term or the Base Rent due for six (6) months, whichever is less.

The lease between Plaintiff and Circle K does not provide that Plaintiff has an obligation to mitigate its damages in the event of Circle K's default.[10] Instead, the lease

[10] For a lease that does require mitigation by its terms, see *Twist Realty, L.P. v. Starbucks Corp.*, No. 08-1136, 2008 WL 5456153 (W.D. La. Dec. 11, 2008). The lease in *Twist Realty* provided "with respect to any remedy exercised by Landlord [in the event of the lessee's default], Landlord shall have an affirmative obligation to use commercially reasonable efforts to obtain another tenant for the Premises promptly, at a fair market rental, and to otherwise mitigate its damages." *Id.* at *4.

provides the Plaintiff *can* relet the premises even if it chooses not to terminate the lessee's right of possession. The lease, however, does not state that the Plaintiff *must* relet the premises or otherwise mitigate its damages in the event of the lessee's default.

The Court finds that the Plaintiff complied with its obligations under the lease and that evidence of any failure to mitigate damages would not be relevant. Accordingly, the motion *in limine* with respect to evidence relating to Plaintiff's effort to mitigate its damages is granted.

**II. Testimony of Nancy Shirar**

Plaintiff seeks to exclude any speculative testimony of Nancy Shirar, an employee of Chicago Title.[11] In the Pretrial Order, Circle K includes as a contested issue of fact "[w]hether Chicago Title would have convened the parties to the Lease to address and to resolve any confusion or disagreement over the execution date of the Lease if Malik had notified Chicago Title regarding the October 7, 2014 date on the Lease at any time when the confusion or disagreement could have been resolved."[12] Plaintiff argues this speculative testimony is inadmissible.

In response, Circle K argues Ms. Shirar should be able to testify regarding the alternatives available to the parties had Plaintiff raised concerns about the escrow agent's placement of October 7, 2014 on the lease because such testimony is based on her "reasonable perceptions and beliefs based on her knowledge and experience with Circle K, as an escrow agent and in the industry."[13]

"Under [Rule 701 of the] Federal Rules of Evidence, speculative opinion testimony by lay witnesses—i.e., testimony not based upon the witness's perception—is generally

[11] R. Doc. 83 at 5.
[12] R. Doc. 80 at 15.
[13] R. Doc. 91 at 14–15.

considered inadmissible."[14] Ms. Shirar may testify only as to the facts she personally experienced or observed. She may testify about "Chicago Title's normal course of business in handing [sic] contracts like the Lease."[15] Ms. Shirar may not give an opinion or speculative testimony as to what she would have done had she been aware the parties disagreed about the execution date of the lease at issue. Such testimony would be speculative and not based on her perception. Accordingly, the motion *in limine* with respect to Nancy Shirar's testimony about what she may have done had the parties made her aware of the disagreement over the execution date of the lease is granted.

**III. Testimony of Scott Dusang**

Plaintiff seeks to exclude testimony of Scott Dusang regarding "what he would have done had plaintiff asked his advice about the November 24, 2014 reinstatement letter that Circle K sent to plaintiff."[16] Plaintiff argues such testimony is speculative and therefore inadmissible.

In response, Circle K argues Mr. Dusang's testimony with respect to what he would have done had he been asked to review the November 24, 2014 letter is relevant and probative of Plaintiff's intent and knowledge.[17]

"Under [Rule 701 of the] Federal Rules of Evidence, speculative opinion testimony by lay witnesses—i.e., testimony not based upon the witness's perception—is generally considered inadmissible."[18] Mr. Dusang may testify only as to the facts he personally

[14] *Washington v. Dept. of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993) (upholding the district court's excluding testimony about what the witness would have done because such testimony was not based upon the witness's perception, but upon self-serving speculation).
[15] R. Doc. 80 at 49, ¶ E.
[16] R. Doc. 86 at 1.
[17] R. Doc. 91 at 19.
[18] *Washington v. Dept. of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993) (upholding the district court's excluding testimony about what the witness would have done because such testimony was not based upon the witness's perception, but upon self-serving speculation).

experienced or observed. Mr. Dusang may not give an opinion as to what he would have done had he been asked to review the November 24, 2014 letter. Nor may he express legal opinions with respect to issues in this case. Accordingly, the motion *in limine* with respect to Scott Dusang's testimony about what he may have done had he been asked to review the November 24, 2014 letter is granted.

## IV. Existence of a Vice of Consent

Plaintiff seeks to exclude evidence or testimony regarding whether a vice or error of consent exists that prevented the creation or formation of the lease.[19] Plaintiff argues this evidence is inadmissible because it is irrelevant under Rule 401 and confusing to the jury under Rule 403.[20]

In response, Circle K argues evidence of consent is relevant and is part of the Plaintiff's burden of proving a contract existed.[21] Circle K contends "Plaintiff has the burden of proof to establish mutual consent, and Plaintiff's unilateral belief cannot create a contract of lease. Moreover, if there is a vice of consent, there is no agreement."[22]

The Court agrees with Circle K. Consent is an essential element of a lease, and consent may be vitiated by error, fraud, or duress.[23] Evidence of consent, or lack thereof, is relevant and necessary. The Court will instruct the jury with respect to the essential elements required to form a lease, and it will be left for the jury to decide whether there existed a vice of consent. Accordingly, the motion *in limine* with respect to evidence regarding whether there existed a vice of consent is denied.

---

[19] R. Doc. 83 at 6.
[20] *Id.*
[21] R. Doc. 91 at 16.
[22] *Id.*
[23] *GE Commercial Fin. Bus. Prop. Corp. v. Louisiana Hosp. Ctr., L.L.C.*, 134 So. 3d 616, 620–21 (La. Ct. App. 1 Cir. 9/13/13).

**New Orleans, Louisiana, this 25th day of January, 2017.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**